UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

REO L. COVINGTON,

Plaintiff,

v. Case No. 23-CV-201

DANE COUNTY SHERIFF CALVIN BARRETT,
CONSOLIDATED FOOD SERVICES, and
MARY CARPENTER,

Defendants.

---

# DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Dane County Sheriff Calvin Barrett, Consolidated Food Services, and Mary Carpenter, by their attorneys, Municipal Law & Litigation Group, S.C., hereby submit the following Brief in Support of their Motion for Summary Judgment.

## FACTUAL BACKGROUND

### I. The Dates of Detention at Issue and Detention Status.

Plaintiff Reo L. Covington ("Covington") was incarcerated at the Dane County Jail on multiple occasions between 2020 and 2023. (DPFOF 1.) Specifically, Covington was housed at the Jail during portions of 2020, 2022, and 2023, including from March 10-19, 2020; March 23-April 3, 2020; July 20-September 16, 2020; January 4-February 18, 2022; August 24-October 20, 2022; February 2-April 7, 2023; and April 13-August 4, 2023. (DPFOF 2.) For each of these incarcerations, Covington was either held at the Dane County Jail on a probation hold or on a parole violation, or held on a probation hold or a parole violation accompanied by new charges. (DPFOF 3.) However, towards the end of Covington's time at the Dane County Jail, the

Department of Corrections issued a "Revocation Order and Warrant" on February 27, 2023, officially revoking Covington's probation as of the date of the order. (DPFOF 4.) According to CCAP, because of that revocation, Covington was sentenced to time served at the jail. (DPFOF 5.) Covington then remained at the Dane County Jail until he was transferred to another agency on August 4, 2023. (DPFOF 6.)

## II. Covington's Diabetes and the Jail's Food Service Provider.

Covington was diagnosed with type 2 diabetes before any of his incarcerations at the Dane County Jail. (DPFOF 7.) Before Covington was incarcerated at the Dane County Jail, doctors had previously advised him to monitor his sugar intake. (DPFOF 8.) Therefore, before entering the Dane County Jail, Covington already understood that managing his diabetes required monitoring his sugar intake and complying with dietary restrictions. (DPFOF 9.)

During the events at issue in this lawsuit, Dane County contracted with Consolidated Food Service ("CFS") to provide meals for inmates at the Dane County Jail. (DPFOF 10.) Consolidated Food Service is a division of the Dane County Department of Administration that provides meals to local facilities, including the Dane County Jail, Juvenile Detention, Badger Prairie Health Care Center, and senior centers across Dane County. (DPFOF 11.) During the period at issue in this lawsuit, the Director of Consolidated Food Service was Mary Carpenter. (DPFOF 12.)

## III. The Jail's Medical Diet Policy and Handling of Covington's Diet.

Each time Covington entered the Dane County Jail, he went through the Jail's booking process, which included medical intake with the Jail's nurses. (DPFOF 13.) Each time Covington underwent medical intake at the Dane County Jail, staff asked him about any medical conditions he had. (DPFOF 14.) It was during the Jail's medical intake process that Covington informed staff that he was diabetic. (DPFOF 15.) Covington also confirmed that during each booking, he was

evaluated by medical staff before entering the Jail. (DPFOF 16.) During each intake, medical staff evaluated Covington's medical condition and determined that he should be placed on the medically prescribed No Concentrated Sweets ("NCS") diet for diabetic inmates. (DPFOF 17.) The NCS diet is the diet jail medical staff prescribe for diabetic inmates. (DPFOF 18.)

Dane County Sheriff's Office Policy § 609.01 "Food Service" requires that all special medical diets be prescribed and approved by qualified medical professionals based on intake screening and medical assessment. (DPFOF 19.) Covington was placed on a medically prescribed NCS diet each time he was housed at the Dane County Jail, which was determined by the Jail's medical staff at booking. (DPFOF 20.)

The NCS diet at the Dane County Jail meets the recommended dietary allowances for daily needs. (DPFOF 21.) The NCS diet's sample daily menu guide is similar to the general diet, excluding concentrated sweets; the general diet likewise provides the recommended dietary allowances for daily needs and averages 2,600-2,700 calories a day. (DPFOF 22.) Both the general diet and the NCS diet are a part of CFS's diet manual for the Dane County Jail, which follows National Commission on Correctional Health Care (NCCHC) guidelines by providing nutritional and medical diets available through CFS that enhance inmates' health and are modified as needed to meet specific requirements related to clinical conditions. (DPFOF 23.) Throughout his incarceration at the Dane County Jail, the medical team addressed his diabetes management by adjusting the NCS diet as needed; for example, depending on his diabetic levels, rotating the NCS diet with the NCS diet that included a high sugar snack or evening snack. (DPFOF 24.)

The jail records reflect such rotation between the NCS diet and the NCS diet with an evening snack diet. (DPFOF 25.)

At the Dane County Jail, the ***only*** difference between the NCS diet prescribed to Covington and the general diet served to inmates who do not require modifications or restrictions is the items included on the breakfast tray. (DPFOF 26.) Therefore, while Covington received the NCS diet or diabetic breakfast trays, he received the same lunch and dinner meals as all other inmates on the general diet during his incarcerations at Dane County. (DPFOF 27.)

At the Dane County Jail, inmates on the general diet generally receive the following for breakfast: one breakfast bar, one serving of cereal, two slices of bread, two teaspoons of a fat, two servings of milk or one serving of milk and one serving of coffee, two jelly packets, one beverage packet, and peanut butter four times a week. (DPFOF 28.) Inmates on the NCS diet generally receive the following for breakfast: one packet of peanut butter, two packets of oatmeal, two slices of bread, two packets of margarine, two packets of diet jelly, coffee, one packet of sugar substitute, and two packets of lemonade or fruit punch. (DPFOF 29.) For the lunch and dinner meals at the Dane County Jail, inmates on the NCS diet receive the same meals as inmates on the general diet. (DPFOF 30.) The NCS with evening snack diet, which Covington was prescribed at various times during his incarcerations at the Dane County Jail, is the same as the NCS diet but provides an evening snack around 8 pm. (DPFOF 31.) The NCS with evening snack diet includes an additional evening snack that consists of two packets of crackers and one packet of peanut butter. (DPFOF 32.)

Covington testified that he disliked the NCS diet's breakfast tray because it included oatmeal, which he has difficulty digesting. (DPFOF 33.) Nevertheless, he acknowledges that jail staff consistently provided him with the prescribed NCS diet's breakfast meal trays. (DPFOF 34.)

## IV. The Handling of Covington's Diet-Related Grievances and Requests.

During his incarcerations, Covington filed multiple grievances related to his NCS diet, which Dane County Jail staff responded to. (DPFOF 35.) Covington acknowledges that jail staff directed him to submit medical requests or grievances regarding his issues with the NCS diet, specifically the NCS breakfast items. (DPFOF 36.) Covington also acknowledges that, in the jail staff's responses to his diet-related grievances, they would explain that his diet was based on medical determinations, and his grievances confirm that jail staff would inform him to file medical grievances or requests. (DPFOF 37.) Covington's grievances and requests received responses from jail staff, who repeatedly advised him that dietary determinations were made by medical staff and instructed him to submit medical requests regarding his diet concerns. (DPFOF 38.)

At various times during Covington's incarceration at the Dane County Jail, he requested the general diet's breakfast tray, which was denied because of his medical NCS diet for his diabetes. (DPFOF 39.) At one point, Covington also requested a vegan diet, which was denied because of his medical NCS diet for his diabetes. (DPFOF 40.) Covington's requests for alternative meals or diets, including the standard breakfast tray and a vegan diet, or for removal of his dietary restrictions, were denied because jail medical staff determined that the NCS diet remained medically appropriate to manage his diabetes. (DPFOF 41.)

## V. The Jail's Medical Service Provider, Medical Diet Policy, and Covington's Medical Care.

At the times relevant to this lawsuit, the Dane County Jail contracted with an outside medical service provider, Wellpath (formerly known as Correct Care Solutions), to provide medical care to inmates. (DPFOF 42.) During the time of Covington's incarceration at the Dane County Jail between 2020 and 2023, Dane County Sheriff's Office Policy § 609.01 Food Service governed special medical diets at the jail. (DPFOF 43.) Dane County Sheriff's Office Policy §

609.01 requires that "[s]pecial diets shall be provided as prescribed by a qualified health care professional." (DPFOF 44.) The policy also provides that special diets are determined based on the information provided by an inmate during intake: "Medical staff shall review medical intake information to determine if residents require a special medical diet. If a resident indicates they require a special medical diet, Medical staff shall interview the resident and complete a medical history to determine the need for and nature of the diet." (DPFOF 45.) The policy provides that when a special medical diet is approved, medical staff shall:

- Document the results of the special medical diet review in the Sheriff's Office Records Management System using Jail Log Event Type MLS – ALL: Meals.
- Notify the food service provider of the special medical diet.
- Notify the resident of the outcome of the review either verbally or via the resident tablet.
- Deliver a completed Special Diet Sheet to the deputy workstation where the resident is assigned.

(DPFOF 46.) The policy also explains the process for inmates requesting to end a special medical diet: "Residents may request an end to a special medical diet by submitting an electronic request via the resident tablet using the Medical Request option. Medical staff shall review the request, document the review as described above, notify the resident of the outcome, notify the food service provider of any changes, and deliver an updated Special Diet Sheet to the deputy workstation where the resident is assigned." (DPFOF 47.)

In accordance with the policy, Covington submitted only one medical request to be removed from his dietary restrictions, but it was denied by jail medical staff, who explained that his restrictions were based on best medical practice guidelines. (DPFOF 48.)

While housed at the Dane County Jail, Covington had access to the jail's canteen, although certain sugar-containing items were limited because of his diabetic dietary restrictions. (DPFOF

49.) Covington testified that he nevertheless purchased canteen items during his incarcerations and sometimes traded canteen items with other inmates. (DPFOF 50.) Covington's canteen receipts from the Dane County Jail also confirm he regularly purchased additional food items from the Jail's canteen, such as ramen, chips, honey buns, and even oatmeal packets. (DPFOF 51.)

There were several instances while Covington was at the Dane County Jail when he refused medical care, such as the following:

- March 24, 2020: Covington "[v]erbally refused vitals and blood sugar check from the nurse[.]" (DPFOF 52.)

- January 5, 2022: Covington "refused nurse administering insulin[.]" (DPFOF 53.)

- June 29, 2023: Covington "refused diabetic check and possible insulin med today. Stated he wanted milk and that he will refuse diabetic checks and meds until he is given a regular breakfast. Nurse Jason attempted to explain why that is not a good idea as he is already having high blood sugar levels consistently. He just talked over Nurse Jason and stated that this is what he felt like he had to do because he wants milk." (DPFOF 54.)

- July 22, 2023: Covington "[r]efused diabetic check from nurse." (DPFOF 55.)

Covington's medical records likewise confirm that there were several times he refused medical care, related to monitoring his diabetes, while at the Dane County Jail. (DPFOF 56.)

Covington's jail logs reflect that, on days after a refusal, the jail nurses would continue to offer insulin to him. (DPFOF 57.) Covington's jail logs also reflect that although there were times at the Dane County Jail when he would refuse his blood sugar checks, the nurse would come back and continue to check on him in the days after he refused a blood sugar check. (DPFOF 58.)

While at the Dane County Jail, Covington alleges that because he was denied the same meals as non-diabetic inmates, he experienced episodes of low blood sugar, hypoglycemia. (DPFOF 59.) When Covington believed he was experiencing an episode of low blood sugar at the Dane County Jail, he would either report his symptoms to inmates or deputies, who would have

the jail's nurses or medical staff respond to check on him. (DPFOF 60.) Sometimes, Covington did not report his incidents of low blood sugar to jail deputies or medical staff, and instead, would treat his symptoms on his own with snacks or with snacks given to him by other inmates that improved his symptoms. (DPFOF 61.) During Covington's reported incidents of low blood sugar, the jail's nurses would respond and check his blood sugar levels. (DPFOF 62.) During Covington's incidents of low blood sugar, if needed, the jail's nurses would provide him with treatments, including additional snacks, glucose tabs, or sometimes advising Covington to wait if a meal was coming soon. (DPFOF 63.) Covington's jail logs reflect that he was regularly receiving blood sugar or diabetic checks from the jail's nurses while he was at the Jail. (DPFOF 64.)

Covington was never hospitalized for low blood sugar while at the Dane County Jail. (DPFOF 65.) Covington's jail logs and medical records confirm he was hospitalized only once between 2020 and 2023 while he was at the Dane County Jail, for hyperglycemia, having high blood sugars, not for having hypoglycemia, low blood sugars, as alleged in his Amended Complaint. (DPFOF 66.) Covington also testified that no doctor has told him that his diet at the Dane County Jail caused him any new medical conditions. (DPFOF 67.) Covington has not been diagnosed as having suffered any permanent physical injury in relation to the Dane County Jail's diet. (DPFOF 68.) Likewise, no doctor has diagnosed Covington with any mental illnesses or injuries caused by the diabetic diet he received while at the Dane County Jail. (DPFOF 69.)

## STANDARD OF REVIEW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive

law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on its pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ARGUMENT

Within the Court's screening order, Covington was granted leave to proceed on an Americans with Disabilities Act ("ADA") and a Rehabilitation Act claim against the Defendants based on plaintiff's allegations that his "diabetes is a disability, and that absent the disability, he would have qualified for regular meals and canteen access." (Dkt. 28, pp. 2-3.) Covington was also granted leave to proceed on a Fourteenth Amendment due process claim challenging his conditions of confinement based on his allegations that Defendants "Barrett, Carpenter and Consolidated Food Services denied him access to adequate food, causing him to suffer several

episodes of hypoglycemia." (Dkt. 28, p. 3.) For the reasons explained below, the Defendants are entitled to summary judgment as a matter of law on all of Covington's claims.

## I. As to Plaintiff's ADA and Rehabilitation Act Claims, Plaintiff Received Reasonable Accommodations for His Diabetes.

Covington contends that the Dane County Jail violated the ADA and Rehabilitation Act because it would not allow him to participate in the regular canteen services or have access to the same meals as non-diabetic inmates. (Dkt. 27, pp. 3-4.)

### A. Legal Standards for Such Claims.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The relief available under the ADA and the Rehabilitation Act is "coextensive." *McDaniel v. Syed*, 115 F.4th 805, 822 (7th Cir. 2024). "'[C]ourts construe and apply [the statutes] in a consistent manner,' and our evaluation of [a plaintiff's] claims under both [requires] the same analysis." *Id.* (quoted source omitted).

To avoid summary judgment under the ADA and Rehabilitation Act, Covington must offer evidence that "(1) he is a qualified person (2) with a disability and (3) the [Dane County Jail] denied him access to a program or activity because of his disability." *McDaniel*, 115 F.4th at 822. It is well established that "[r]efusing to make reasonable accommodations is tantamount to denying access." *Id.* at 823. "Just as an employer is not obliged to provide an employee with a disability the particular accommodation he requests or prefers … jail officials are not required to provide an

inmate with disabilities the particular accommodations he requests or prefers." *Id.* Rather, "the [defendant] need only provide some reasonable accommodation," that ensures that the person with disabilities has "equal access to the benefits of" programs or activities. *McDaniel*, 115 F.4th at 823.

### B. The Limits of ADA and Rehabilitation Act Claims and Reasonable Accommodations.

For purposes of summary judgment, Defendants do not dispute that Covington is a qualified individual with a disability. Nevertheless, Covington's ADA and Rehabilitation Act claims fail because the undisputed evidence demonstrates that the Dane County Jail provided reasonable accommodations for his diabetes, including diabetic meals and related medical care.

There are threshold limits, however, to reasonable accommodations where, as here, there is interplay with medical decision-making. Neither the ADA nor the Rehabilitation Act creates a federal remedy for medical malpractice. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 861, 2013 WL 268682 (N.D. Ill. 2013). Here, under *Bryant*, these Defendants should not be held liable for the allegations involving the medical handling of a diabetic inmate's dietary requests. Here, the inmate's medical providers (Wellpath), determined that the inmate's already prescribed medical diet accommodation was most appropriate.

Even if reasonable accommodation claims can be maintained against these Defendants, the accommodation standards were met. A reasonable accommodation is one that provides meaningful access to the prison's programs and services. *See Dunmore v. Shicker,* No. 16-CV-171-MAB, 2020 WL 65057, at *13 (S.D. Ill. Jan. 7, 2020) (citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 908 (6th Cir. 2004) (discussing *Tennessee v. Lane*, 541 U.S. 509 (2004)); *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006)). "The key question is whether the inmate was able to participate in the activities in question, given his disability, with

or without reasonable accommodations from the prison." *Love*, 103 F.3d at 560; *Flakes v. Carr*, No. 17-CV-237-WMC, 2021 WL 3022111, at *7 (W.D. Wis. July 16, 2021), *aff'd*, No. 21-2464, 2022 WL 519909 (7th Cir. Feb. 22, 2022) (same).

Here, Covington received a reasonable accommodation for his diabetes through the medically prescribed NCS diet and related canteen restrictions implemented by jail medical staff, from Wellpath. Each time Covington entered the Dane County Jail, medical staff evaluated his diabetes during intake and determined that he should be placed on the NCS diet pursuant to DCSO Policy § 609.01. The policy specifically requires that special diets be prescribed and approved by medical professionals based on medical intake and assessment. Consistent with that policy, Covington was repeatedly prescribed the NCS diet or the NCS diet with an evening snack based on his diabetic condition and blood sugar management.

Notably, Covington admits that he consistently received his prescribed NCS breakfast trays while incarcerated at the Jail. He also testified that aside from breakfast, he received the same lunch and dinner meals as inmates on the general diet. Thus, Covington was not denied access to meals or excluded from participation in meal services. Rather, he received modified NCS breakfast meals specifically designed to accommodate his diabetes while otherwise receiving the same meals as other inmates.

Likewise, Covington was not denied access to the Jail's canteen services. He testified that he continued to purchase canteen items throughout his incarceration and sometimes traded canteen items with other inmates. His canteen receipts confirm that he regularly purchased additional food items from the Jail's canteen, such as ramen, chips, honey buns, and even oatmeal packets. Although certain sugar-containing canteen items were restricted due to Covington's diabetic condition, those restrictions were based on medical determinations intended to manage his diabetes

and were offset by his continued ability to purchase other permitted canteen items consistent with those restrictions. *See Dickerson v. Durant*, No. 23-CV-3144, 2024 WL 5454101, at *2 (C.D. Ill. Jan. 8, 2024) (rejecting claim that restriction of commissary items containing sugar and carbohydrates violated constitutional rights, explaining plaintiff "does not have a federal constitutional right to purchase items (food or non-food) from a commissary," and noting that, in light of plaintiff's diabetes, it was within medical professional judgment to restrict access to such items as part of treatment; citing *Brown v. Gulash*, No. 07-CV-370-JPG, 2009 WL 2144592, at *5 (S.D. Ill. July 16, 2009), and *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996)("we know of no constitutional right of access to a prison gift or snack shop"). Accordingly, the restrictions on what Covington could order from the canteen were a reasonable accommodation that balanced medical judgment, while ensuring he still received access to the benefits of the jail's canteen.

Moreover, it is undisputed that Covington's complaints with his NCS diet concerned his disagreement with the specific accommodation selected by medical staff – the oatmeal provided in his NCS breakfast trays, not a denial of accommodations altogether. While Covington may have requested alternative diets (including the general diet's breakfast tray and a vegan diet) or even requested the removal of his dietary restrictions entirely, those requests were met with medical analysis by the jail medical staff, who determined that the NCS diet remained medically appropriate for management of his diabetes. Covington acknowledges that jail staff repeatedly informed him that dietary determinations were medical decisions handled by medical providers and instructed him to submit medical requests regarding any diet concerns. In fact, Covington submitted only one formal medical request seeking removal of his dietary restrictions, and medical staff denied it because his medical diet and restrictions were based on best-practice medical guidelines.

As noted above, under the ADA and Rehabilitation Act, "jail officials are not required to provide an inmate with disabilities the particular accommodations he requests or prefers." *McDaniel*, 115 F.4th at 823. Here, the evidence establishes that the Jail provided Covington with a medically prescribed NCS diet specifically designed to accommodate his disability. Covington's dissatisfaction with the contents of the NCS breakfast trays – particularly the oatmeal served in the NCS breakfast – does not convert his disagreement with medical judgment into an ADA or Rehabilitation Act violation. Likewise, the restrictions on what Covington could order from the canteen were a reasonable accommodation that balanced medical judgment and ensured he still had access to the benefits of the jail's canteen.

### C. The Defendants Were Not Personally Responsible for the Medical Dietary Decisions and Did Not Cause Any Harm.

Nor can Covington establish that the named Defendants were personally responsible for the dietary decisions he challenges. Under DCSO Policy § 609.01, only jail medical staff, not Sheriff Barrett, Consolidated Food Service, or Carpenter, could approve, deny, or modify special medical diets. To the extent Covington claims Defendants violated his rights by refusing to provide his preferred diet or by maintaining his diabetic restrictions, those claims fail because medical staff alone, not the named Defendants, could make those determinations. *See Harper v. Harding*, No. 20-CV-493-PP, 2022 WL 3700882, at *7 (E.D. Wis. Aug. 26, 2022) ("To the extent that the plaintiff claims that the defendant violated his rights by not placing him on a Halal diet, that claim must fail because he alleges it against someone who was not personally responsible for approving dietary requests."); *see also Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019); *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (Section 1983 limits liability to public employees "for their own misdeeds, and not for anyone else's.").

Further, Covington cannot establish that he was denied meaningful access to meals, canteen services, or other jail programs because of his disability. *See Love*, 103 F.3d at 560-561. The undisputed evidence instead demonstrates that the Jail accommodated his diabetes by providing him with the NCS diet's diabetic breakfast trays, diabetic snacks when medically necessary, continued access to the jail's canteen, and ongoing medical monitoring by jail nurses and medical staff. When Covington reported symptoms of low blood sugar, jail nurses responded, checked his blood sugar levels, and provided treatment, including snacks, glucose tablets, or other interventions as appropriate. Even when Covington refused diabetic checks, insulin administration, or other treatment, jail nurses continued attempting to monitor him and provide diabetic care.

Additionally, Covington cannot establish any actionable injury resulting from the alleged denial of access to the same meals as non-diabetic inmates. Covington was never hospitalized for hypoglycemia while at the Dane County Jail. His records instead reflect only one hospitalization during the relevant period, and that hospitalization was for hyperglycemia, high blood sugar, not low blood sugar caused by inadequate meals. Covington also testified that no physician has told him that the Jail's diabetic diet caused him any permanent physical injury, new medical condition, or mental illness. Rather, Covington merely speculated that he "won't know for several years" whether he suffered any internal injuries. Such speculation is insufficient to create a genuine dispute of material fact at summary judgment. *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025) (the nonmovant must come forward with enough evidence to place their "version of events" beyond the level of mere "speculation or conjecture.")

## II. Plaintiff's Conditions of Confinement Claim Fails as a Matter of Law.

Covington was granted leave to proceed on a conditions of confinement claim based on his allegations that "Barrett, Carpenter and Consolidated Food Services denied him access to adequate food, causing him to suffer several episodes of hypoglycemia" were sufficient to "state a claim that he was housed in objectively unreasonable conditions." (Dkt. 28, p. 3.)

Covington's constitutional status while he was at the Dane County Jail falls into a legal gray area. For many of his incarcerations at the Dane County Jail, he was arrested on new charges while also being held on a probation hold or parole violation. Covington was also held at the Dane County Jail through August 4, 2023, even though the Department of Corrections' "Revocation Order and Warrant" officially revoked his probation on February 27, 2023, for which he was ultimately sentenced to time served. The Seventh Circuit has not expressly decided whether the Eighth Amendment applies to an individual held on a probation violation.[1] Accordingly, Defendants address the claim under both standards. Under either framework, however, the claim fails because the undisputed record shows that Covington consistently received medically appropriate, nutritionally adequate food, Defendants did not control or alter his medical diet, and there is no evidence of a causal connection between his diet and any alleged injury.

### A. Fourteenth Amendment.

Under the Fourteenth Amendment, pretrial detainees are entitled to confinement under humane conditions, which includes "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates

[1] *See Stockton v. Milwaukee Cnty*. 44 F.4th 605, 614 n.3 (7th Cir. 2022) (noting that it was not entirely clear whether the plaintiff, who was detained … on an unadjudicated probation violation, fits within the Eighth Amendment or Fourteenth Amendment framework.); *Estate of Clark v. Walker*, 865 F.3d 544, 546 n.1 (7th Cir 2017) (noting that 'courts have expressed some uncertainty regarding which amendment controls for hybrid forms of detention" but declining to decide the issue.); *Whitting v. Marathon Cnty. Sheriff's Dep't*, 382 F3d 700, 703 (7th Cir. 2004) (stating in dicta that an individual detained at jail on a probation hold was 'arguably a pretrial detainee' but declining to definitively decide).

who consume it." *French v. Owens*, 777 F.2d 1250 (7th Cir. 1985). In determining whether the denial of food rises to the level of a constitutional violation, "a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). The occasional missed meal does not pose a constitutional concern. *See Jaros v. Illinois Dep't of Corr.,* 684 F.3d 667, 671 (7th Cir. 2012).

To prevail on a Fourteenth Amendment condition of confinement claim Covington must establish: (1) the conditions in question are or were objectively serious, based on their severity and duration; (2) the defendants acted purposefully, knowingly, or recklessly with respect to the consequences of their actions; and (3) the defendants actions were objectively unreasonable – that is, "not rationally related to a legitimate governmental objective or ... excessive in relation to that purpose." *Harper v. Harding*, No. 20-CV-493-PP, 2022 WL 3700882, at *8 (E.D. Wis. Aug. 26, 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)); *Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019). To satisfy the mental state requirement, under the objective analysis, Covington must establish the defendants "did not take reasonable available measures to abate the risk of serious harm to [plaintiff], [ ] though reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024) (emphasis omitted). He cannot meet these legal standards.

<u>First</u>, Covington cannot establish that he was subjected to an objectively serious deprivation of access to adequate food while at the Dane County Jail. During each of his incarcerations between 2020 and 2023, Covington was medically screened at booking, was noted as being a type 2 diabetic, and was placed on a medically prescribed NCS diet for diabetic inmates by jail medical staff. Covington acknowledges that he consistently received diabetic breakfast

trays and that his lunch and dinner were the same as those provided to inmates on the general diet. Rather than being denied food, Covington received a consistent diet specifically tailored to his medical condition while still receiving standard meals for most of the day.

Therefore, Covington had continuous access to nutritionally adequate food throughout his confinement. Covington's complaint is not that he was deprived of meals or provided inadequate nutrition, but rather that he disliked the NCS diet's breakfast because it included oatmeal in his breakfast tray, which he testified he found difficult to digest. Despite this preference-based objection, Covington admits he consistently received his NCS breakfast trays, which included not only oatmeal but also a packet of peanut butter, two slices of bread, two packets of margarine, two packets of diet jelly, coffee, a packet of sugar substitute, and two packets of lemonade or fruit punch. He also received the same lunch and dinner as inmates on the general diet. Critically, both the NCS diet and the general diet at the Dane County Jail meet the recommended daily allowances for essential nutrients, confirming that Covington received adequate nutrition.

In similar situations, courts have recognized potential liability only where officials fail to provide a medically prescribed diabetic diet despite knowledge of the plaintiff's diabetic condition. *See Taylor v. Anderson*, 868 F. Supp. 1024, 1026 (N.D. Ill. 1994). That is not what occurred here. Instead, jail staff consistently ensured that Covington received the diet prescribed by Wellpath medical professionals. Covington also retained access to canteen items consistent with his dietary restrictions and, by his own testimony, was able to trade food items with other inmates.

At most, Covington's allegations reflect dissatisfaction with a single component of his breakfast tray, oatmeal, within an otherwise nutritionally adequate NCS diet. Courts have consistently held, however, that inmates are not constitutionally entitled to meals of their preference or to food that is palatable or aesthetically pleasing, so long as they receive adequate

nutrition. *See Williams v. Moffett*, No. 18 C 5563, 2021 WL 825670, at *12 (N.D. Ill. Mar. 3, 2021) (an "inmate is not entitled to the diet of his choice" rather only "an extended period in which an inmate receives inadequate nutrition amounts to a constitutional violation."); *McGee v. Monahan*, No. 06 C 3538, 2008 WL 3849917, at *8 (N.D. Ill. Aug. 14, 2008) (explaining "the Constitution provides only that inmates receive adequate nutrition; food that is not aesthetically pleasing or tasty does not violate an inmate's civil rights").

Second, the record does not support that Defendants acted purposefully, knowingly, recklessly, or in an objectively unreasonable manner. Defendants Barrett, Carpenter, and Consolidated Food Services did not have the authority to prescribe, modify, or discontinue Covington's diet. Under Dane County Jail policy § 609.01, only medical personnel could make dietary determinations relating to special medical diets based on intake screening and ongoing medical evaluation. The Defendants' lack of personal involvement in the medical dietary decisions would not allow this claim to proceed. *See Harper v. Harding*, No. 20-CV-493-PP, 2022 WL 3700882, at *7 (E.D. Wis. Aug. 26, 2022) ("For starters, it is undisputed that former defendant Administrator Wallenhaupt approved and/or denied dietary requests and submitted the requests to the kitchen for compliance. The defendant did not have the authority to approve or deny dietary requests and was required to follow Wallenhaupt's decisions. To the extent that the plaintiff claims that the defendant violated his rights by not placing him on a Halal diet, that claim must fail because he alleges it against someone who was not personally responsible for approving dietary requests."); *see also Williams v. Shah,* 927 F.3d 476, 482 (7th Cir. 2019); *Burks v. Raemisch,* 555 F.3d 592, 595-96 (7th Cir. 2009) (Section 1983 limits liability to public employees "for their own misdeeds, and not for anyone else's.").

Third, Covington cannot show that Defendants' actions were objectively unreasonable, that is, not rationally related to a legitimate governmental objective or excessive in relation to that purpose. *Hardeman v. Curran*, 933 F.3d 816, 824; *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). Again, neither Barrett, Carpenter, nor Consolidated Food Services had authority to independently alter Covington's medically prescribed diet. Under Dane County Jail Policy § 609.01, only medical staff could prescribe, modify, or discontinue special medical diets based on intake screening and ongoing medical assessment.

On these facts, no reasonable jury could conclude that Defendants' conduct was "not rationally related to a legitimate governmental objective" or excessive in relation to that purpose. Instead, the undisputed evidence shows a routine implementation of a special medical diet that provided Covington with adequate nutrition, which is objectively reasonable as a matter of law, regardless of whether he disliked one item provided at breakfast.

**B. Eighth Amendment.**

The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants [must be] deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Minor injuries do not satisfy the objective component of an Eighth Amendment claim. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

With respect to food, prisoners are entitled to meals that meet minimum caloric and nutritional requirements. *Smith v. Dart*, 803 F.3d 304, 311–12 (7th Cir. 2015). Prison officials "must provide inmates with nutritionally adequate food that is prepared and served under

conditions which do not present an immediate danger to [their] health and well-being[.]" *Id.* at 312 (cleaned up). While the Eighth Amendment does not mandate comfortable prisons, it also does not permit inhumane ones. *See Prude v. Clarke*, 675 F.3d 732, 734 (7th Cir. 2012) ("Deliberate withholding of nutritious food or substitution of tainted or otherwise sickening food, with the effect of causing substantial weight loss, vomiting, stomach pains, ... or other severe hardship, would violate the Eighth Amendment."). But prisoners are not entitled to "food that is tasty or even appetizing. Indeed, routine discomfort is part of the penalty prisoners pay for their offenses, and prisoners cannot expect the amenities, conveniences, and services of a good hotel." *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004) (cleaned up). Here, the Eighth Amendment standard would presumably apply, at the very least, to the time period Covington was incarcerated at the Dane County Jail after his probation was officially revoked. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 593 (7th Cir. 2003) (noting that it is an open question whether the Eighth Amendment or Fourteenth Amendment applies to a prisoner on a probation hold, but assuming that the Eighth Amendment would apply after probation is revoked).

First, the record does not establish an objectively serious deprivation of adequate food that posed a substantial risk to Covington's safety. Covington alleges he was denied adequate food during his incarcerations at the Dane County Jail between 2020 and 2023. However, the record reflects that during each period of confinement, Covington was consistently evaluated at intake, diagnosed with type 2 diabetes, and placed on a medically prescribed NCS diet for diabetic inmates by Wellpath medical staff. He also acknowledged that he received the prescribed diabetic breakfast trays, and that lunch and dinner meals were the same as those provided to inmates on the general diet. Both the NCS diet and the general diet meet an individual's recommended dietary allowances for all nutrients.

In short, Covington received the very diet prescribed by jail medical staff to manage his diabetes. Courts have recognized liability for jail officials or medical staff only where officials fail to provide a medically prescribed diabetic diet despite knowledge of the condition. *See Taylor v. Anderson*, 868 F. Supp. 1024, 1026 (N.D. Ill. 1994). Here, the record demonstrates the opposite: Covington was consistently provided the prescribed NCS diet throughout each period of incarceration.

At most, Covington challenges one component of his breakfast tray, such as the oatmeal, or expresses dissatisfaction with the diet's contents. But disagreement with food choices does not amount to a constitutional violation when adequate nutrition is provided. *See Hall-Bey v. Cohn*, 86 F. App'x 200, 201 (7th Cir. 2004) (affirming summary judgment and explaining that under the Eighth Amendment "any risk to Hall–Bey's health resulted from his own choice to forego the pork entree in his diabetic meals, rather than any disregard for his medical condition on the part of the defendants"); *Williams v. Shah*, 927 F.3d 476, 481 (7th Cir. 2019) (affirming summary judgment where record evidence, including affidavit testimony and menu plans, established that the jail "brunch" diet provided 2,200–2,400 calories per day, equivalent to regular three-meal plans, and was nutritionally adequate; plaintiff presented no evidence challenging the menus' nutritional sufficiency and thus failed to create a genuine issue of material fact that the diet posed a substantial risk of serious harm under *Farmer*'s objective standard).

It is also undisputed that Covington maintained access to the jail's canteen, purchased additional food from it, and traded items with other inmates, thereby further confirming that he was not deprived of adequate nutrition. Accordingly, no reasonable jury could find that Covington was subject to an objectively serious deprivation.

Second, Covington cannot satisfy the subjective component because there is no evidence that any of the named Defendants acted with deliberate indifference or were personally aware of any substantial risk of harm to him. The subjective standard "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020). "[T]he evidence must show that the prison official . . . knew or was aware of – but then disregarded – a substantial risk of harm to an inmate's health." *Id.* at 1030-31. Here, Covington cannot establish that Defendants Barrett, Carpenter, or Consolidated Food Services were ever informed that Covington was suffering harm from his diet, that he faced a substantial medical risk, or that any alleged food issue required intervention. To the contrary, the evidence reflects that Covington was repeatedly evaluated by medical staff, placed on a medically prescribed diet, and monitored through the jail's medical system. Dietary decisions were made exclusively through medical personnel, not by the named Defendants.

Additionally, because Defendants did not prescribe, modify, or medically evaluate Covington's diet, there is no evidence of personal knowledge or involvement in any alleged deprivation. The absence of such knowledge forecloses liability under the Eighth Amendment. *See Williams v. Shah*, 927 F.3d 476, 483 ("That lack of knowledge forecloses any claim against the defendant under the subjective part of the *Farmer* test.").

**C. Under Either Constitutional Standard, Causation is Not Met.**

Lastly, under both the Fourteenth and Eighth Amendment standards, Covington lacks the required causal harm to support a claim. Even if the Court finds Covington's alleged deprivation to be objectively serious, he must show both injury and a causal connection to a constitutional violation. Under § 1983, a plaintiff must establish that there is an "'actual' present injury and that there is a causal connection between that injury and the deprivation of a constitutionally protected

right caused by a defendant." *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). Covington alleges he's suffered from several episodes of hypoglycemia, attributable to his diet at the jail, but the record is devoid of any corroboration.

Specifically, the record contains no evidence of diagnoses, medical testing, contemporaneous treatment, or medical requests linking any harm to Covington's jail diet. During the relevant periods of confinement, Covington was never hospitalized for low blood sugar at the Dane County Jail. Jail medical records confirm that he was hospitalized only once between 2020 and 2023, and that hospitalization was for hyperglycemia, elevated blood sugar, not hypoglycemia as alleged in the Amended Complaint. Covington further testified that no medical provider has ever told him that his jail diet caused any new medical condition or injury. When asked whether any physician had opined that the Dane County Jail's diet caused permanent physical injury, Covington identified no such medical opinion and instead speculated that he "won't know for several years" whether any permanent internal injury exists. Likewise, Covington confirmed that no doctor has diagnosed him with any mental illness or condition caused by the diabetic diet he received at the Dane County Jail.

For these reasons, whether Covington's conditions of confinement claim is evaluated under the Fourteenth or Eighth Amendment, it fails as a matter of law based on the undisputed facts.

## III. Consolidated Food Service Should Be Dismissed Because Consolidated Food Service Is Not an Entity That Can Be Sued.

Plaintiff's Amended Complaint asserts claims against Consolidated Food Services, an entity that cannot legally be sued, which warrants its dismissal. Consolidated Food Service is a division of the Dane County Department of Administration that is responsible for providing meals to local facilities including the Dane County Jail, Juvenile Detention, Badger Prairie Health Care Center, and senior sites across Dane County. The Plaintiff's attempt to sue Consolidated Food

Services, a department of Dane County, dooms his claims against it. Agencies and departments of a local government may not be sued as a "party" separate from the government they serve. *See Best v. City of Portland*, 554 F.3d 698, 698 n.1 (7th Cir. 2009); *Buchanan v. City of Kenosha*, 57 F. Supp. 2d 675, 678 (E.D. Wis. 1999) (collecting cases). Because Consolidated Food Services forms a part of the county government they serve, they are not "legal entit[ies] separable from the county government"; therefore, they are not subject to suit. *Whiting v. Marathon Cnty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004). The claims against it should be dismissed accordingly.

## IV. Sheriff Barrett and Mary Carpenter are Entitled to Qualified Immunity.

Government officials are shielded from liability for civil damages when their conduct does not violate clearly established "statutory or constitutional rights" of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official is entitled to immunity if, when he acted, "he reasonably could have believed that his action did not violate a clearly established law." *Cham v. Wodnick*, 123 F.3d 1005, 1008 (7th Cir. 1997), *cert denied*, 522 U.S. 1117 (1998).

A two-part test determines qualified immunity: (1) whether the plaintiff has established a deprivation of a constitutional right; and if so, (2) whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 607, 609 (1999). In determining whether the right alleged to have been violated was "clearly established," a constitutional right must have been identified in a particularized sense with regard to the circumstances of the alleged violation. *Warlick v. Cross*, 969 F.2d 303, 309 (7th Cir. 1992). Government officials may be protected from liability for objectively reasonable decisions, even if the decision is later determined to be wrong. *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988).

In the Seventh Circuit, once a defendant claims qualified immunity, the burden is on the plaintiff to show the right claimed to have been violated was clearly established. *Pounds v. Griespenstroh*, 970 F.2d 338, 342 (7th Cir. 1992). A plaintiff must offer "controlling authority" or "a robust consensus of cases of persuasive authority" as of the date of the incident. *Humphrey v. Staszek*, 148 F.3d 719, 727 (7th Cir. 1998). It is a "longstanding principle" that "clearly established law' should not be defined at a high level of generality," "existing precedent must have placed the [] question beyond debate[,]" and qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S.Ct. 548, 555 (2017).

Here, Sheriff Barret and Mary Carpetenter are entitled to qualified immunity. First, Covington cannot establish a constitutional violation because the undisputed evidence shows he was repeatedly evaluated by medical staff, placed on a medically prescribed diabetic diet, provided nutritionally adequate meals, permitted continued canteen access subject to diabetic restrictions, and monitored throughout his incarcerations at the Dane County Jail. At most, Covington disagrees with aspects of the prescribed diabetic diet or restrictions on certain canteen items, which do not establish deliberate indifference or unconstitutional conditions of confinement.

Second, Covington cannot identify any clearly established law holding that either of these individuals violates the Constitution by relying on medical professionals' determinations regarding a diabetic inmate's prescribed diet or related canteen restrictions. Nor is there any clearly established authority requiring a non-medical official, such as Sheriff Barrett or Mary Carpenter, to override medical decisions regarding inmate dietary accommodations. To the contrary, existing case law recognizes that inmates are entitled only to nutritionally adequate food, not meals of their choosing, and that medically based dietary and canteen restrictions do not violate constitutional

rights. None of that precedent would have placed Sheriff Barrett or Mary Carpenter on notice that their conduct violated clearly established law.

## CONCLUSION

For the reasons explained above, the Dane County Sheriff Calvin Barrett, Consolidated Food Services, and Mary Carpenter respectfully request that this Court grant their Motion for Summary Judgment and dismiss all claims against them as a matter of law.

Dated this 22nd day of May 2026.

**MUNICIPAL LAW & LITIGATION GROUP, S.C.**

Attorneys for Dane County Sheriff Calvin Barrett, Consolidated Food Services, and Mary Carpenter

By: */s/ Electronically signed by Remzy D. Bitar*

REMZY D. BITAR
State Bar No: 1038340
SAVANNA M. GAIN
State Bar No. 1125785

730 N. Grand Avenue
Waukesha, WI 53186
O: (262) 548-1340
F: (262) 548-9211
E: rbitar@ammr.net
sgain@ammr.net