IN The United States District Court
For The Western District of Wisconsin

Reo L. Covington,
Plaintiff, Case No. 23-CV-201

V.

Dane County Jail Sheriff, Calvin Barrett,
Consolidated Food Services, and
Mary Carpenter,
Defendants.

Plaintiff's Brief Opposing Defendant's Motion For Summary Judgment:

Reo L. Covington, plaintiff, prose, does hereby submit his Brief Opposing Defendants Motion For Summary Judgment.

Introduction:

Reo L. Covington, plaintiff, (Covington hereinafter) brought suit against these defendants raising claims under the Americans with Disabilities Act and the Rehabilitation Act and claims that conditions of confinement were inhumane in violation of Covington's right to Due Process, while he was held at the Dane County Jail at different periods between March 10, 2020 and August 3, 2023. (D.P.F.O.F. 2).

Defendants have moved for summary judgment and Covington, submits this Brief Opposing Defendants Motion for Summary Judgment demonstrating a genuine dispute as to issues of material fact, which preclude a grant of summary judgment.

Facts of The Case:

Reo L. Covington has been held at the Dane County Jail off and on since the mid-late 1990's, as to the time period relevant to this lawsuit, Covington was held at the Dane County Jail on seven different ocassions between March 2020 and August 3, 2023. See, P.P.F.O.F. 3; D.P.F.O.F. 2; Covington Decl. para 3.

Covington's diabetes was diagnosed in 2008. However, the first time Covington was held in Dane County Jail after becoming diabetic was in October of 2009, which is only relevant to establish, that Dane County Jail has known Covington as diabetic for numerous years. Covington Decl. paras. 3, 4; P.P.F.O.F. 2.

Covington began stressing to deputies, nurses, and filed many grievances in 2020 because of the consistent hypoglycemic low blood sugar episodes he was experiencing, several times a week, always between breakfast and lunch meals. Covington often refused morning insulin, hoping to prevent an event of low blood-sugar, before the lunch meal came. (P.P.F.O.F. 7). Covington's pleas to end the NCS diet breakfast or for modification were only met with stark refusals, no explanation. (P.P.F.O.F. 7)

Covington repeated his requests during intakes in 2022 and 2023. He filed multiple grievances, which directed him to file a medical grievance, which were denied, with no avenue of appeal. Covington filed more grievances and appeals and was eventually threatened with disciplinary action if he continued to file grievances about these issues.

Covington filed this lawsuit because he was denied access

on an equal basis to the jail's programs, services and activities and the benefits of those programs, services and activities by his exclusion from regular breakfast meals and regular access to canteen as the non-diabetic inmates at the jail. These exclusions resulted in denying Covington equal access in violation of the Fourteenth Amendment to the United States Constitution and violates the American with Disabilities Act and the Rehabilitation Act's proscription against exclusion from programs, services and activities of public entity's solely due to disability. Diabetes in this matter.

Summary Judgment Standard:

Summary judgment is granted only if the record before the Court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(c). A "material" fact is only relevant if it might affect the outcome of the suit under the governing law." See, Anderson v. Liberty Lobby Inc. 477 U.S. 242, at 248, 106 S. Ct. 2505 (1986).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, at 323. Once this burden is met the non-moving party must designate specific facts to support or defend its case. Id at 323-24.

In analyzing whether a question of fact exists, the Court construes the evidence in light most favorable to the party opposing the motion. See, Anderson, 477 U.S. at 255. The mere existence of some factual dispute does not defeat a summary judgment motion; however there must be a genuine issue of material fact for the case to survive. See, Anderson, at 247-248.

Failure to support any essential element of a claim renders all other factors immaterial. See, Celotex, 477 U.S. at 323.

A genuine issue of material fact requires specific and sufficient evidence that if believed by a jury, would actually support a verdict in the nonmovant's favor. See, Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986).

ADA-RA: Argument.

Covington argues that the Dane County Jail and co-defendants did violate the ADA/RA, by their excluding him, as a diabetic, from the programs, services and activities of Dane County Jail.

Under Title II of the ADA, "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, and activities of a public entity or be subjected to discrimination by any such entity. See, 42 U.S.C. 12132.

The Rehabilitation Act, Section 504 provides: "No otherwise qualified individual with a disability.....shall solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." See, 29 U.S.C. section 794(a).

Any claims for relief is available coextensively under both acts. See, Jaros v. Illinois Dept. of Corrections, 684 F.3d 667, 671-672,

(7th Cir. 2012). "Courts construe and apply the statutes in a consistent manner" and this Court's evaluation of Covington's claims under both acts requires the same. See, A.H. Holzmueller v. Illinois High School Association, 881 F.3d 587, 592 (7th Cir. 2018) quoting, Radaszewski ex rel. Radaszewski v. Moram, 383 F.3d 599, 607 (7th Cir. 2004), as cited in McDaniel v. Syed, 115 F.4th 805, 822 (7th Cir. 2024).

"To avoid summary judgment under the ADA/RA (Covington) must offer evidence that (1) he is a qualified person (2) with a disability and (3) the (Defendants) denied him access to a program or activity because of his disability." McDaniel v. Syed, 115 F.4th at 822.

"The (Defendants) dispute only the third element. If (Covington) demonstrates through evidence that a reasonable jury could find in his favor, "the burden shifts to the (Defendants) to prove that they provided reasonable accommodation or that providing such would be an undue hardship. (Id at 822), also Oconomowoc Residential Programs, Inc. v. City of Milwaukee, 300 F.3d 775, 784 (7th Cir. 2002) "An accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program (Id).

"It is well established that, "refusing to make a reasonable accommodations is tantamount to denying access." Id at 823.

"Just as an employer is not obliged to provide an employee with a disability the particular accommodation he requests or prefers. (Id. at 823) ... (Jail) officials are not required to provide an inmate with disabilities the particular accommodations he requests or prefers. (Id).

Rather the (Defendant) need "only provide some reasonable accommodation,"

that ensures that the person with disabilities, has equal access to the benefits of (the) programs or activities. McDaniel, 115 F. 4th at 823.

In a (jail), qualifying programs and activities include meals, medical care, showers, toilets and the like. (Id). Whether an accommodation satisfies these requirements is a highly fact-specific inquiry, whether in employment or (jail). (Id at 823).

Defendants attempt to compare Covington's exclusion to Plaintiff in Dickerson v. Durant, 2024 WL 5454101, however, Covington suffered due to his being diabetic, every time he had a hypoglycemic event in the morning between breakfast and lunch. (P.P.F.O.F. 7). Equal access, necessarily includes, meals nutritionally sustaining that prevent low blood sugar events, and not cause them, as is the case with Covington. (P.P.F.O.F. 7). Unlike Dickerson, Covington's goal was to stop experiencing the numerous low blood sugar episodes, which often included symptoms like: nausea, panicky feelings, agitation, inability to concentrate, sweating, uncontrollable tremors, dizziness, visible skin pallor, weakness and hysterical fear (P.P.F.O.F. 11).

Covington was dubbed, the name - "Sugar Low," by the jail inmates and staff; because it was an almost daily event between 8:30 AM and 10:30 AM, that Covington would have a low blood sugar, medical emergency. P.P.F.O.F. 7; Covington Decl. para 6.

Defendants argue the point, "The NCS diet is the diet jail medical staff prescribe for diabetic inmates." (D.P.F.O.F. 18; Shellenberger Aff. Ex. 2 at p. 14, Ex. 3 at p. 14). They argue that the NCS diet is nutritionally valuable, and meets guidelines. But the plain truth is as a diabetic Covington, needed the very sustenance of the general breakfast

diet. A breakfast that non-diabetics received daily. Yet, Covington was excluded from the very food, that would ensure he had equal access to to jail's programs, services and activities. Covington was excluded from the daily-normal detainee routine free from punishment. Covington's exclusion was due solely to his diabetes, and the incalculable events of low blood sugar demonstrates, there was no equal access to the benefits of the jails programs or activities. P.P.F.O.F. 7, 27; Covington Decl. para. 18.

The exclusion or denial of equal access to the jail's programs, services and activities, were due to the global exclusion of all diabetics. "The NCS diet is the diet jail medical staff prescribe for diabetic inmates." (D.P.F.O.F. 18). This has caused this lawsuit and will inevitably, if not corrected cause an eventual fatality..

..."Leaving a diabetic such as (Covington) without proper food or insulin when it is needed creates an objectively, sufficiently serious risk of harm." See, Egebergh v. Nicholson, 272 F.3d at 927-928 also see, Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985) "If a prisoner tells the prison doctor that he is allergic to penicillin, but the doctor injects him with penicilin anyway and the prisoner has a severe reaction, the doctor is guilty of having inflicted a cruel and unusual punishment.....the doctor knows there is a great danger, could avert it at trivial cost.. but instead ignores it."

Covington demonstrated in 2020, if he was forced to consume the NCS diet, it would "create an objectively sufficiently serious risk of harm." See, P.P.F.O.F. 4, 6, 7, 8, 10, 11, 12, 13, 14, 20, 21, 22, [redacted] 26, 27 and 28) (D.P.F.O.F. 18). But refusal was a certain event

of hypoglycemia. The systemic structure and layers of the policy, practice and custom of globally excluded or excluding all diabetics from the same general diet breakfast as the non-diabetics, is people like Covington whom are "Brittle Diabetics" whom may spike to 600 for no reason at all, or drop to 38, again for no reason. (Covington Decl. para 5; P.P.F.O.F. 6). People whom (Covington) will be unconstitutionally deprived of the general diet breakfast solely due to there being diabetic, which may or may not cause harm. But the risk is in the global exclusion; policy accepted and enforced by the Defendants through delegation of responsibility and duty to Wellpath and maintenance of DCSO Policy (section) 609.01.

On document M001009 - Provider Treatment Order dated 8-24-2022, per jail policy Covington was doomed to a certainty of hypoglycemic low blood sugar episodes, not as a best health practice, particularly when Covington, was in the Dane County Jail from Jan. 4, 2022 through February 18, 2022 complaining about the exclusion from ADA/RA programs, services and activities. See, Document M001009; Covington Decl. para 19 P.P.F.O.F. 28.

Defendant argues that Covington disagreed with the contents of the NCS diet breakfast tray. However, Covington's problem was receiving less than what was daily without fail, provided to the non-diabetic inmates. Non-disabled inmates who did not suffer from hypoglycemic low blood sugars, after eating all of their breakfast as Covington did, nearly everyday before lunch. (P.P.F.O.F. 7).

DCSO Policy 609.01, "Food Service requires that all special medical diets be prescribed and approved by qualified medical professionals based on intake screening and medical assessment." (D.P.F.O.F. 19). In other words, Covington says, "I'm diabetic, but I can manage as long as I get my accu-checks and insulin regularly." The intake Nurse, automatically flags him for NCS diet with canteen restrictions. See, D.P.F.O.F. 18 - "The NCS diet is the diet jail medical staff prescribe for diabetic inmates." An individual medical determination based on Covington's particular diabetic needs is problematic, because an individual diabetes management plan is not determined, at booking, at the time of the first stage of Covington's denial of access to the jail's programs services and activities and deprivation of the benefits of the breakfast meal that does not contribute to his demise, ill-health or hypoglycemic low blood sugar events, at least not on the same basis as the non-diabetic inmates. Those inmates are not flagged and their breakfast is much more in content and sustenance. (See, D.P.F.O.F. 28, 29).

Defendants exclusion of Covington from equal access to the general diet breakfast meals and denial of equal access to the jail's canteen without restrictions, as the non-diabetics received is not best on best medical practice, due to all Defendants in the respective positions, know or should know that, "Leaving a diabetic such as (Covington) without proper food or insulin when it is needed creates an objectively

sufficiently serious risk of harm. P.P.F.O.F. 4, 6, 7, 8, 10, 11, 12, 13, 14 20, 21, 22, 26, 27, and 28; D.P.F.O.F. 18. This actions were an obvious consequence of allowing the policy, practice and custom of: "The NCS diet is the diet jail medical staff prescribe for diabetic inmates." Covington Decl. pasas. 8, 9 P.P.F.O.F. 12, 13 and 14; D.P.F.O.F. 18.

Re-iterating that exclusion from the jail's regular breakfast meals and denial of equal access to the jail's canteen services, were equivalent to blatant violations of the ADA/RA proscriptions forbidding such discrimination. Defendants, "had knowledge that harm to a federally protected right is substantially likely," when they placed the responsibility of all the jail's medical concerns in the hands of (Wellpath) and the allowance of all diabetics to be globally excluded from equal access to the jail's meal services and canteen services on an equal footing as the non-diabetics housed at the jail. Defendants failure to act upon the likelihood that not only Covington, but any other "Brittle Diabetic" who needs a carbohydrate/sugary breakfast daily to manage his/her diabetes will suffer severe consequences, trying to get off the NCS diet, or, trying to remain healthy and/or alive due to that person being disabled by diabetes. See, Lacy v. Cook County, 897 F.3d at 862-863 quoting S.H. ex rel. Durrell v. Lower Merion School District, 729 F.3d 248, at 263 (3d Cir. 2013) as cited in McDaniel at 823.

Defendants rightfully do not dispute that Covington is a qualified person with a disability, for the purposes of summary judgment. (See Def. Brief at p. 11). Defendants further argue that the Dane County Jail provided reasonable accommodations for

Covington's diabetes including diabetic meals and related medical care. (Id at p.11). Defendants also infer that any exclusion from regular breakfast meals and regular access to the jail's canteen was most appropriate as it was medically prescribed. (Id at p.11). It must be amplified that, "A reasonable accommodation is one that provides meaningful access to the prison's programs and services" (Id at p.11).

"The key question is whether (Covington) was able to participate in the activities in question, given his disability with or without reasonable accommodations from the [jail]. (Love v. Westville Correctional Center, 103 F.3d 568, at 560).

Defendants stated: ..."Covington received a reasonable accommodation for his diabetes through the medically prescribed NCS diet and related canteen restrictions implemented by Jail medical staff. (Def. Brief at p.12).

Covington experienced (however unnecessary) numerous hypoglycemic low blood sugar events which symptoms often included, but were not limited to: nausea, panicky feelings, agitation, inability to concentrate, sweating, uncontrolled tremors, dizziness, visible skin pallor, weakness and hysterical fear. (P.P.F.O.F. 11). This occurred sometimes 4-5 times a week. P.P.F.O.F. 7-14, 20, 21, 22, 24, 27, 28; Covington Decl. paras. 6-9, 13-14, 17, 19.

These hypoglycemic low blood sugar episodes were all but permanently preventable, and predictable as well. Particularly after having been in and out of Dane County Jail, so much as a diabetic. The NCS diet with canteen restrictions was not based on any medical determination of Covington's

individual diabetic needs. (D.P.F.O.F. 18).

A reasonable jury could find that Dane County Jail's practice, policy, and custom which automatically (for years) applied... ..."The NCS diet.....(as) "the diet jail medical staff, prescribe for diabetics inmates," (D.P.F.O.F. 18), was an imminent, substantial risk of harm and injury, due to Covington being disabled, diabetic, and as such violates the American with Disabities Act's and the Rehabilitation Act's prohibited discrimination based on such disability. P.P.F.O.F. 6, 7, and 8, 28; Covington Decl. paras. 6-7, 42 U.S.C. 12132 and 29 U.S.C. 794(a).

A reasonable jury could find the Covington's exclusion or being automatically placed on the NCS diet with canteen restrictions in 2022 and 2023, were acts of gratuitous cruelty, and intended to inflict harm and injury, being that it was widely known that all diabetics, are not the same, and any attempt to globally discriminate which results in injury as what continued to happen to Covington, solely due to him being diabetic-disabled, was prohibited by the ADA/RA and the Fourteenth Amendments to the United States Constitution.

The United States Supreme Court, has long held: "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison (jail in this case) and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." (See, Snipes v. Detella, 95 F.3d 586 at 590).

Under the deliberate indifference standard a claim for a violation of the ADA/RA, survives summary judgment by demonstrating that the exclusion or failure to accommodate was intentionally discriminatory or at least deliberately indifferent to its violations." (See, McDaniel, at 823). Requiring both (1) Knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." (See, Liese v. Indian River County Hosp. Dist., 701 F.3d 334, at 344).

A reasonable jury could conclude that at a minimum, Defendants repeated attempts to give Covington insulin, knowing he was experiencing hypoglycemic episodes of low blood sugar, was a failure to act reasonably upon the substantial likelihood that harm to Covington's federally protected rights was almost certain. (See. Def. P.F.O.F. 13, 14, 15, 16, 17, 18, 20 35, 36, 37, 38, 39, 40, and 41).

A not unsimilar argument can be made for the conditions of confinement claim. Seen in the record, is Covington's exclusion from the same general diet breakfast was due to him being diabetic, resulted in an exceptionally increased number of hypoglycemic low-blood sugar events, which included, but is not limited to these symptoms: nausea, panicky feelings, agitation, inability to concentrate, sweating, uncontrolled tremors, disorientation, dizziness, visible skin pallor, weakness and fear of everything (P.P.F.O.F. 11).

Amplifying that the conditions of confinement in this case were forced upon Covington as a diabetic. Covington at intake admits to being diabetic and is automatically placed on..."The NCS diet...(as) the diet jail medical staff prescribe for diabetics." (D.P.F.O.F. 18).

These forced conditions earned Covington the nick-name of "Sugar Low," because it was known that between 8:30AM and 10:30 Am, Covington would more likely than not need a nurse, or need help getting a nurse for his hypoglycemic low blood sugar episode some times 4-5 times a week.. (P.P.F.O.F. 6, 7, 8; Covington Decl. paras. 4, 5, 6, 7, 8).

Defendants did respond most of the time, but over the years involved, there was at least a half dozen times, no medical assistance was provided or, the other inmates, or, deputies gave Covington peanut butter, crackers and milk.

The contention of Covington being dissatisfied with just oatmeal is a grave understatement, that is more insult than relevant. A reasonable jury could conclude than even one forced hypoglycemic episode of low blood sugar is inhumane under the Constitutional holdings in Estelle, Farmer, Ortiz v. Webster, Ortiz v. City of Chicago, Arnett and many others. Such conditions of confinement are indeed a gratuitous cruelty.

Summary Judgment must be denied.

Defendants Are Responsible For Reckless Disregard of the Obvious Consequences of DCSO Policy 609.01 and its Implementation by Wellpath:

DCSO Policy (section) 609.01 is a policy implemented and enforced by Dane County Sheriff, Calvin Barrett, with the aid and assistance of Consolidated Food Services, Director Mary Carpenter.

In McDaniel, the Court explained, "that the deprivation of food McDaniel argues, violates Title II of the ADA would also violate the Eighth Amendment's prohibition on Cruel and unusual Punishment, as incorporated against the states through the Fourteenth Amendment (or at least a reasonable jury could find as much).

Covington in contrast was not deprived of meals, yet he was part of the inmates whom were globally discriminated against for there being diabetic-disabled. Resulting in Covington and all other diabetics, being forced to accept..."The NCS diet the diet jail medical staff prescribe for diabetics." (D.P.F.O.F. 18). The NCS diet, did not have 2 cartons of milk, a cereal bar or breakfast bar, cereal as was included with the general diet breakfast trays. (D.P.F.O.F. 28, 29)

A reasonable jury could find that being forced to accept the NCS diet tray with canteen restrictions, was forced medical treatment, which almost certainly ended in a hypoglycemic low blood sugar event between 8:30 AM and 10:30 AM, (P.P.F.O.F. 6, 7, 8; Covington Decl. paras. 4-8), was action contributable or attributed to Dane County Jail allowing the global exclusion of all diabetics from the

equal access to the jail's general diet breakfast tray. Thus, also being in violation of the Fourteenth Amendment and the Eighth Amendment, as well as violating the ADA/RA.

On the record a reasonable jury could conclude that Covington left on the NCS diet breakfast, after he requested to modify it, or discontinue it, for his health safety amounts to gratuitous cruelty. See, Ralston v. McGovern, 167 F.3d 1160 at 1162 - "Ralston was not seeking an expensive or unconventional treatment..." Covington only sought to modify his personal NCS diet or to discontinue it, by doing so stopping or lessening the hypoglycemic low blood sugar episodes he was consistently experiencing, almost 4-5 times a week. Hypoglycemic episodes that included but are not limited to: nausea, panicky feelings, agitation, inability to concentrate, sweating, uncontrolled tremors, disoriented, dizziness, visible pallor, weakness and fear of everything (P.P.F.O.F. 11).

There in the record, Defendants argue, that the jail medical placed Covington on an NCS diet with canteen restrictions. (D.P.F.O.F. 17-18). Also, the later argument is that Wellpath as the jail's medical provider did the exclusion of Covington and all diabetics from the programs, services and activities of the jail, because Wellpath is the jail's medical provider. (See, Def. Brief p.11).

The (Defendants), "cannot shield (themselves) from 1983 liability by contracting out it's duty..." (See, Lee v. Milwaukee County, Wisconsin, 195 F.4th at 884).

The record reflects that the jail staff sometimes responded to Covington's numerous episodes of hypoglycemic blood sugars. It is also evident that Covington medical request was denied with no avenue of appeal, to stop the NCS diet. (P.P.F.O.F. 7) The record further reflects, that, "The NCS diet is the diet jail medical staff prescribe for diabetic inmates. (D.P.F.O.F. 18). The practice, policy and custom of the jail's medical provider to automatically discriminate against all diabetics, regardless of the needs of the individual diabetic, as Covington whom is a Brittle diabetic, who needs more sugary foods/carbs in the morning with ~~or~~ without Am insulin. The only criteria is to be diabetic. This authority is given the same force as having come from the Dane County Sheriff, Calvin Barrett with acquiescence from Mary Carpenter and Consolidated Food Service.

In 2020, this may have been negligent oversight, but after March 19, 2020. Covington repeatedly experienced low blood sugars once he was placed on the NCS diet with canteen restrictions.

The Seventh Circuit stated in Lee: "If Wellpath had an express policy of refusing to treat prisoner's cardiac arrests; for example, that is enough to establish the County's municipal fault whether or not Wellpath ever disclosed that policy to County officials... those actions are properly attributable to the County, which does not contend that the scope of its delegation to Wellpath is anything less than absolute." See. e.g. Thomas v. Cook County, 604 F.3d at 303- (recognizing county's potential Monell liability based on contractor's practices."

In comparison, Defendant's say it was the jail medical staff/provider - Wellpath, who automatically placed Covington on the NCS diet with canteen restrictions, and even though we gave Wellpath the authority to do such a violation to Covington, we are not liable. That argument goes against what the Seventh Circuit states above.

The diabetes-disability is the only criteria, that mattered when the jail medical staff - Wellpath excluded Covington from the jail's general diet breakfast tray, that has 2 cartons of milk, a cereal bar, a bowl of cereal, two slices of bread, jelly etc.; and forced him to accept the NCS diet knowing that multiple blood sugar hypoglycemic low blood sugar episodes were sure to come, and left Covington to his fate. (P.P.F.O.F. 7-8; D.P.F.O.F. 17, 18, 19).

Defendants in a concerted effort enforce DCSO Policy (section) 609.01 and in doing so are responsible for Covington's exclusion from the jail's meals and canteen services on an equal basis as the non-diabetic inmates. In doing so defendants never do any follow-up assessment, to make a determination based on an individual basis, whether or not Covington will or will not benefit from the same general diet as the non-diabetics. Yet each request to discontinue or modify the NCS diet was met with stark refusal. (See, P.P.F.O.F. 7).

The automatic exclusion of Covington from the regular non-diabetic breakfast meals and canteen services on an equal basis as the other non-diabetics is prohibited by the ADA/RA and the

...Fourteenth Amendment to the United States Constitution.

The McDaniel Court explained in analysis from Wright v. New York State Dept. of Corrections, 831 F.3d 64, 74, 79 (2d Cir. 2016), "If a prisoner needs help from other prisoners to access programs, however, the general rule is that the accommodation is ineffective and inadequate." Covington having to trade canteen and ask other inmates for candy or snacks in order to stop or reverse a hypoglycemic low blood sugar event does not equate to reasonable accommodations. (See, D.P.F.O.F. 50). In Wright as expressed by the McDaniel Court... "The Court found it obvious that these shortcomings were examples of Wright being denied meaningful access to prison services, programs and activities. The Court also took particular issue with Wright's forced reliance on other prisoner's to navigate prison programs, which was fundamentally in tension with the ADA and the Rehabilitation Act's emphasis on independent living and self-sufficiency." (See, McDaniel at 826; Wright 831 F.3d at 74-75).

Covington argues that Defendant's delegation to the jail medical provider, authority to implement practice, policy and custom that violates the rights of all diabetics, Covington in particular is not immunity from liability.

Re-iterating, (The Defendants), "cannot shield (themselves) from 1983 liability by contracting out its duty..." (Lee, 175 F.4th at 884). Wellpath is an acting agent for Dane County Jail; Mary Carpenter, and Consolidated Food Services are willing parties

who could and should know that at least one person's federally protected right would be harmed with the acquiescence of global exclusion of all diabetics from the jail's general menu breakfast and regulAR access to non-restricted canteen services of the jail. The obvious consequence even a 1 in 10,000 is too great not to prevent such harm. Summary Judgment must be denied.

Covington's Conditions of Confinement Were Insufferable:

Covington while acknowledging the gray area of hybrid dentention would note for the record that: "state does not acquire right to punish until sentencing." See, Lewis v. Downey, 581 F.3d 467 at 475 (7th Cir. 2009). So in opposition to Defendants view, Covington hereby demonstrates additional issues of genuine dispute for the Fourteenth and Eighth Amendments conditions of confinement claim.

Fourteenth Amendment - Conditions of Confinement:

Covington's claims pertaining to the Dane County Jail arise under the under the Fourteenth Amendment Due Process Clause (See, Hardeman v. Curran, 933 F.3d 816, at 821-822).

Covington must, raise a triable issue as to whether the conditions he experienced at the jail were objectively unreasonable. See Lee v. Milwaukee County, Wisconsin, 175 F.4th at 883-884; conditions are objectively unreasonable if they are imposed expressly to punish or are excessive in relation to a legitimate purpose." Hardeman, 933 F.3d at 822; Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

A reasonable jury could conclude that Covington had no choice in whether or not he wanted to experience so many hypoglycemic low blood sugar episodes, which were largely attributable to being forced on... "The NCS diet the diet jail medical staff prescribe for diabetic inmates." (D.P.F.O.F. 18). (The defendants), "cannot shield itself from 1983 by contracting out its duty..." (Lee, 175 F.4th at 884) Covington like Lee demonstrates that Wellpath has an express policy of refusing to treat diabetics on an individual clinical picture for each diabetic, by the automatic placement on... "The NCS diet the diet jail medical staff prescribe for diabetic inmates." (D.P.F.O.F. 18). Covington argues that the global exclusion as is executed by the jail's medical staff - Wellpath, establishes fault for Dane County Jail, Sheriff Calvin Barrett and Mary Carpenter as the Director of Consolidated Food Service. This is so whether or not Wellpath ever disclosed that policy to County officials... those actions are properly attributable to Dane County Jail, Sheriff Calvin Barrett and Mary Carpenter, Director of Consolidated Food Service; "which does not contend that the scope of its delegation to Wellpath is anything less than absolute. Lee, 175 F.4th at 884; See, e.g. Thomas v. Cook County, 604 F.3d at 303-(recognizing county's potential Monell liability based on Contractor's practices.")).

The Seventh Circuit recognized, "that the Supreme Court has been signaling that Courts must pay careful attention to the different status of pretrial detainees...

(Hardeman, 933 F.3d at 822).

Covington contends that the policy of the jail's intake nurses (Wellpath) to automatically place all diabetics on "The NCS diet the diet jail medical staff prescribe for diabetic inmates." (D.P.F.O.F. 18). This very policy, practice, or custom, is a punishment for all diabetics, who are not placed on the NCS diet, by a determination that takes into account the last ten-20 accu-check readings or, the amounts and/or types of insulin or medication this particular diabetic may need. Failing to utilize some fact-based impartial criterion for globally depriving Covington and other diabetics, equal access to the programs, services and activities of Dane County Jail, creates conditions of confinement that are objectively unreasonable. (P.P.F.O.F. 6, 7, 8). Covington suffered through numerous hypoglycemic low blood sugar experiences that were trivial to prevent, unnecessary and not related to any positive management of his diabetes, especially every episode after March 19, 2020. After that day, the intake nurse (Wellpath) applied ... "The NCS diet the diet jail medical staff prescribes diabetic inmates." (D.P.F.O.F. 18) Emphasizing, "Covington was placed on a medically prescribed NCS diet each time he was housed at the Dane County Jail, which was determined by the jail's medical staff at booking." (D.P.F.O.F. 20).

Having to face this gratuitous cruelty, after March 19, 2020, left Covington fighting to survive, in a paranoid

state of mind, which only exacerbated his ongoing mental health and PTSD issues, which triggered episodes that led to hunger strikes, denial of medications, including insulin all because Covington really wanted to live.

Covington believes the record supports denial of summary judgment, as there are genuine disputes of material fact.

Any reasonable jury could conclude that Covington could show that his conditions were objectively unreasonable by direct evidence or, by circumstantial evidence as to the state of mind of the decision-makers in this case.

Request Denial of Summary Judgment.

Eighth Amendment:

Under the Eighth Amendment, with respect to living conditions Covington must demonstrate unquestioned and serious deprivations of basic human needs or of the minimal civilized measure of life's necessities to establish an Eighth Amendment violation. See, Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392 (1981).

The Supreme Court of the United States has listed as basic human needs: food, clothing, shelter, medical care, and reasonable safety, as well as warmth and exercise. (See, Deshaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200, 109 S. Ct. 998).

It cannot be reasonably argued that Covington having a hypoglycemic low blood-sugar is a prescribed punishment. Nor can it be argued that after eating the NCS diet, Covington usually within a matter of 3-4 hours, would experience an episode of hypoglycemic

low blood sugar, 3 or more times per week, is any example of Covington receiving, the very diet prescribed by jail medical staff to manage his diabetes." (Def. Brief p. 22).

Covington was never placed on any dietory restrictions, until the Dane County Jail, intake nurses, began doing so, as part of their policy, practice and custom for all diabetics entering the jail. (See, D.P.F.O.F. 18 and P.P.F.O.F. 4).

"The Eighth Amendment prohibits cruel and unusual punishment of a prisoner. It is well established that a prison's (jail's) officials' deliberate indifference to a prisoner's serious medical needs violates that mandate. Farmer v. Brennan, 511 U.S. at 835, 114 S.Ct. 1970, as cited in McDaniel, 115 F.4th at 832; Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). To support a claim of deliberate indifference Covington must establish both an objective component, which is the seriousness of the challenged conditions, and the subjective component, inferring the state of mind of the officials who are responsible for them. (See, Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970; Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991).

Defendants as policy making authority, delegated authority to the jail's medical provider (Wellpath) whom implemented a practice, policy and custom which included... "The NCS diet is the diet jail medical staff prescribe for diabetic inmates." (D.P.F.O.F. 18). A global exclusion of Covington and all other diabetics from the same high carb. breakfast served as part of the jail's general menu to non-diabetics. The objective component is in the automatic exclusion, which can not be denied, or, as seen by Covington, not based on any factors of Covington's

clinical diabetes management. The allowance of such practice, policy and custom, creates an objectively sufficiently serious risk of harm." (See, P.P.F.O.F. 4, 6, 7, 8, 11, 26, 27, 28; D.P.F.O.F. 18).

The risk that Covington or any other diabetic will suffer injury is an obvious consequence, that is willingly, knowingly and recklessly disregarded by the jail's medical staff - Wellpath. The immediate above states both components of a violation of the Eighth Amendment in the context of the conditions of confinement experienced by Covington. For years these discriminatory applications were automatically fixed upon Covington each time he entered the Dane County Jail. (D.P.F.O.F. 20). These so-called best-medical practices, were done with the known risk that those like Covington, who needed all the carbs they could get would be harmed by this automatic exclusion from the jail's general diet breakfast. (D.P.F.O.F. 18) (D.P.F.O.F. 20).

A reasonable jury could conclude that Covington could show Defendants knew, or should have known the substantial risk of injury and harm to Covington with direct evidence of Defendants states of mind or indirectly with circumstantial evidence that Defendants acted with no care as to how these practices of Wellpath would effect Covington and other similarly situated diabetics.

Summary Judgment Should Be Denied.

Causation:

Defendants argue, that in spite of being forced to eat "the NCS diet the diet jail medical staff prescribe for diabetic

inmates." O.P.F.O.F. 18; demonstrating numerous hypoglycemic low blood sugar episodes. Low blood sugar symptoms which included: nausea, panicky feelings, agitation, inability to concentrate, sweating, uncontrolled tremors, dizziness, visible pallor, weakness and feeling scared. (See, Covington Decl. para. 11). These numerous events according to Defense argument, does not make them liable to Covington.

Yet, Covington asked that, "the NCS diet the diet jail medical staff prescribe diabetic inmate," be discontinued as this diet was the cause of his consistent hypoglycemic blood sugar events. (P.P.F.O.F. 4, 6, 7, 8). Summary Judgment Is Precluded.

Consolidated Food Service Is A Participating Party:

The Supreme Court has recognized several scenarios when private entities will be considered state actors for the purpose of a claim pursuant to 1983. Under the joint action or conspiracy theory, a private party who conspires with the government to infringe on a plaintiff's rights will be classified as a state actor. See, Adickes v. S.H. Kress and Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970), so too, will a party performing a function that has traditionally been, "the exclusive prerogative of the state." See, Scott v. Univ. Chicago Medical Center, 107 F.4th at 757; citing Jackson v. Metro Edison Co., 419 U.S. 345, 353, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974).

Defendants acted in concert each with the other and consented to allow the substantial likelihood that the federally protected rights of diabetics - Covington included

would be greatly harmed. Their disregard or failure to act upon those likely to be harmed or injured or any intervention to prevent such, by Consolidated Food Services, Mary Carpenter as Director, makes her and Consolidated Food Services, willing parties to the actions of all. Summary Judgment Must Be Denied:

Qualified Immunity Is Not Appropriate:

Qualified immunity is a form of immunity from suit - that is, the trial process and attendant burdens - not merely immunity from damages. See, Mitchell v. Forsyth, 472 U.S. at 526-527. Qualified immunity protects government officials from damages liability insofar as their conduct does violate clearly established statutory or constitutional rights of which a reasonable person would have known." See, Estate of Clark v. Walker, 865 F.3d 544, 549-550 7th Cir. 2017 quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). The two part inquiry consists of (1) Whether the facts taken in the light most favorable to (Covington), show that the defendants violated a constitutional right; and (2) whether that Constitutional right was clearly established at the time of the alleged violation. See, Campbell v. Kallas, 936 F.3d 536, 545. "The latter inquiry is often dispositive and may be addressed first." See, Pearson, 555 U.S. at 236, 129 S. Ct. 808). To be clearly established, a Constitutional right must have a sufficiently clear foundation in then existing precedent. (See, District of Columbia v. Wesby, 138 S. Ct. at 589).

The principle of fair notice pervades the doctrine.

Qualified immunity applies unless the specific contours of the right were sufficiently definite that any reasonable official in the defendants' shoes would have understood that he was violating it. (See, Plumhoff v. v. Rickford, 572 U.S. at 778-779, 134 S.Ct. 2012).

The Americans with Disabilities Act of 1990, as well as the Rehabilitation Act Section 504, were clearly established at all times relevant to this civil suit.

The Eighth and Fourteenth Amendments to the United States Constitution were clearly established and sufficiently definite at all times relevant to these matters.

Covington has demonstrated that each of the clearly established Constitutional protections guaranteed to him have in fact been clearly violated.

Violation by exclusion and denial of equal access to Dane County Jail's programs, services and activities on an equal basis, and denial of the benefits of said programs, services and activities violated mandates of the ADA/RA and the Fourteenth Amendment to the United States Constitution. (See, McDaniel v. Syed, 115 F.4th 805, 823-824).

Defendants are not entitled to qualified immunity, and it is apparent in their efforts to pass the liability on to Wellpath. Defendant allowed violations of federally protected rights of Covington, which caused numerous hypoglycemic episodes of low blood-sugar. Qualified Immunity

is not applicable for these defendants.
Qualified Immunity Should Be Denied.

In summary, the record is filled with conflicting contentions, however, it must be emphasized that the practice, policy and custom of the jail's medical staff - Wellpath violated the ADA and RA.

Covington survived numerous episodes of unnecessary hypoglycemic low blood suger because he was a diabetic, excluded from the jail's general diet.

This treatment from March 2020 over seven different detention periods until August 3, 2023, became a gratuitous cruelty that Covington was dependent on other inmate's charity or their willingness to trade canteen with him.

The conditions of confinement were inhumane and Defendants are not entitled to Summary Judgment.

Respectfully Submitted,

7-14-2026.

Reo L. Covington
Reo L. Covington