IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

REO L. COVINGTON,

Plaintiff,

v.

OPINION and ORDER

23-cv-201-wmc

DANE COUNTY SHERIFF KALVIN BARRETT, CONSOLIDATED FOOD SERVICES, and MARY CARPENTER,

Defendants.

---

As a diabetic, plaintiff Reo Covington, who is representing himself, claims that defendants denied him access to adequate food items during his incarceration at the Dane County Jail. More specifically, he claims that defendants restricted him to a "no concentrated sugar" diet, resulting in multiple episodes of hypoglycemia in violation of the Americans with Disabilities Act, Rehabilitation Act and the United States Constitution. Now before the court is defendants' motion for summary judgment on all plaintiff's claims. (Dkt. #45.) For the reasons explained below, that motion will be granted.[1]

UNDISPUTED FACTS[2]

**A. Background**

Plaintiff Reo L. Covington was incarcerated at the Dane County Jail on multiple occasions between 2020 and 2023 for various reasons, including on holds for possible

---

[1] Also before the court are defendants' motion to seal certain medical documents (dkt. #50) and plaintiff's motion to file a brief in sur-reply (dkt. #69), both of which the court will also grant.

[2] Unless otherwise indicated, the following facts are drawn from the parties' proposed findings of fact and responses, as well as the record where appropriate.

probation or extended supervision violations, for a parole violation, or for new criminal charges. During this time, defendant Kalvin Barrett was the Dane County Sheriff, while defendant Mary Carpenter was the director of the third defendant, Consolidated Food Service ("CFS"), which is a division of the Dane County Department of Administration. As such, CFS provides meals to local facilities, including the Dane County Jail, Juvenile Detention, Badger Prairie Health Care Center, and senior centers across Dane County.

**B. Covington's No Concentrated Sugar Diet and Canteen Access**

Covington was diagnosed with type 2 diabetes in 2008 and refers to himself as a "brittle diabetic," meaning that he experiences unpredictable and severe shifts in his blood sugar levels from very low (hypoglycemia) and very high (hyperglycemia). Nonetheless, Covington has been able to manage his diabetes using insulin and medication. Until Covington was incarcerated at the Dane County Jail in 2020, he'd never been placed on a specific diet for his diabetes. However, when Covington entered the Dane County Jail in 2020 and informed the medical intake staff that he was diabetic, they ordered he be placed on a medically-prescribed, "No Concentrated Sweets" or "NCS" diet. This was ordered despite Covington telling medical staff during intake that he did not need a specialized diet *and* that his main concern was with *hypo*glycemia, *not* hyperglycemia.

The NCS diet is one of several possible medical diets that can be ordered by medical staff at Dane County Jail. Other unique medical diets recognized at the jail include: no added salt; low fat; low lactose; clear liquid; double portions; and low fiber. (Dane County Consolidated Food Service Diet Manual (dkt. #52-3, at 11).) Further, these medical diets differ from other religious and "personal choice" diets offered by the jail in that only medical

staff may prescribe, approve, change or end medical diets prescribed at intake screening and follow-up medical assessments. (Dane County Sheriff's Office Policy § 609.01 (dkt. #52-1).)

Importantly, the NCS diet prescribed to Covington does not differ significantly from the diet offered to inmates more generally who require no modifications or restrictions. In particular, the *only* difference between the NCS diet and the general diet are the items included on the breakfast tray; the lunch and dinner meals being the same for the NCS and general diet. Even for the breakfast tray, the meals are similar, except that the NCS tray excludes concentrated sweets. For example, inmates on the "general" diet receive the following for breakfast: one breakfast bar; one serving of cereal; two slices of bread; two teaspoons of a fat; two servings of milk or one serving of milk and one serving of coffee; two jelly packets; one beverage packet; and peanut butter four times a week. By contrast, inmates on the NCS diet generally receive the following for breakfast: one packet of peanut butter; two packets of oatmeal; two slices of bread; two packets of margarine; two packets of diet jelly; coffee; one packet of sugar substitute; and two packets of lemonade or fruit punch. Finally, both the general and NCS diets meet the recommended dietary allowances for daily needs and averaged between 2,600 and 2,700 calories a day.

### C. Covington's Diet-Related Grievances and Requests

Nevertheless, according to Covington, the loss of a cereal bar and two milks on the breakfast tray was significant enough to cause him to experience multiple, hypoglycemic episodes between breakfast and lunch due to a lack of carbohydrates and sugar. During a hypoglycemic episode, Covington would experience nausea, shaking, trembling, dizziness, sweating, fear, difficulty concentrating, and difficulty speaking. When Covington believed he was experiencing an episode of low blood sugar at the Dane County Jail, he would either report

his symptoms to correctional staff or other inmates. Sometimes nursing staff would also check on him and test his blood sugar, providing snacks or glucose tablets if necessary. On other occasions, Covington treated his symptoms on his own with snacks that he or other inmates purchased from the commissary. Finally, at various times during his incarceration at the Dane County Jail, Covington was placed on an NCS diet "with evening snack," which meant that he received an evening snack around 8:00 p.m.

Indeed, throughout his incarceration at Dane County Jail, Covington had access to the jail's canteen while on the NCS diet, although certain sugar-containing items were limited. Moreover, Covington purchased numerous canteen items during his incarcerations, including ramen, chips, honey buns, and oatmeal packets. Covington would also sometimes trade canteen items with other inmates, so that he could obtain more carbohydrates and sugar.

During his incarcerations, Covington filed multiple grievances requesting to be taken off the NCS diet. Most frequently, he complained that his so-called "diabetic breakfast tray" did not contain enough food to be equivalent to a general breakfast tray. Specifically, he believed that oatmeal and two drink packets did not make up for the loss of cereal, a breakfast bar, and two cartons of milk. Covington sent the majority of his grievances to correctional staff, who responded on multiple occasions that only medical staff could alter his diet because it was based on a medical assessment. He was instructed several times to file a medical grievance or request as well, and he filed one medical grievance denied by a nurse on the grounds that jail medical staff had determined the NCS diet remained medically appropriate to manage his diabetes.

OPINION

Plaintiff contends that defendants violated the ADA, Rehabilitation Act and United States Constitution by excluding him as a diabetic from the general meal plan and access to all canteen products, except costly, sugar-free items. More specifically, he claims that his meals failed to provide him adequate calories and sugar, causing him to suffer numerous events of hypoglycemia and nausea, sweating, loss of awareness, agitation and aggressive behavior. Defendants have moved for summary judgment on all plaintiff's claims.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## I. ADA and Rehabilitation Act

Plaintiff's statutory claims require the same analysis. *McDaniel v. Syed*, 115 F.4th 805, 822 (7th Cir. 2024). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by

any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To succeed on his claims under the ADA and Rehabilitation Act, therefore, plaintiff must show that: "(1) he is a qualified person (2) with a disability and (3) defendants denied him access to a program, service or activity because of his disability." *McDaniel*, 115 F.4th at 822. For purposes of summary judgment, defendants concede that plaintiff is a qualified person with a disability (dkt. #46, at 11), but argue that he was not denied access to a program, service or activity *because* of his disability.

The court agrees. Although denying access to meals and commissary *could* implicate the ADA and Rehabilitation Act, plaintiff has not shown that he was denied access to either. *See McDaniel*, 115 F.4th at 823 ("In a prison, qualifying programs and activities include meals, medical care, showers, toilets, and the like[,]" but "the [defendant] need only provide some reasonable accommodation that ensures that the person with disabilities has equal access to the benefits of programs or activities.") (citation and quotation omitted).

In this case, plaintiff received three meals a day that not only provided for his daily caloric and nutritional needs but was substantially similar to those given to inmates without medical restrictions. He also had access to the commissary, albeit with restrictions prescribed by medical staff to accommodate his diabetes. Although plaintiff was unhappy with these restrictions, "prison officials are not required to provide a prisoner with disabilities the *particular* accommodations he requests or prefers." *Id.* (emphasis added) (citing *Mobley v. Allstate Insurance Co.*, 531 F.3d 539, 546 (7th Cir. 2008)).

While framing his claims as sounding in disability discrimination, plaintiff actually appears to be arguing that he was denied a diet that properly accounted for his tendency to experience hypoglycemia. However, a dietary *accommodation* for a medical condition does not fall within the purview of either the ADA or Rehabilitation Act, both of which provide relief for exclusion from a prison service, program or activity, or for discrimination based on disability. In particular, neither statute provides relief for allegedly incompetent medical treatment. *See Hope v. Berg*, No. 5:21-CV-1308, 2022 WL 80322, at *4 (N.D. Ohio Jan. 7, 2022) (failure to provide proper diet to an inmate with a gluten allergy may state a claim for inadequate medical care, but is not covered by the ADA); *Kensu v. Rapelje*, No. 12-cv-11877, 2015 WL 5302816, at *4 (E.D. Mich. Sept. 10, 2015) (same); *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004) (claim that prisoner with diabetes was denied a proper diet is not the type of claim that ADA was intended to cover); *Galvin v. Cook*, No. CV 00–29–ST, 2000 WL 1520231, at *6 (D. Or. Oct. 3, 2000) (claim for improper treatment for diabetes not an ADA claim). Because plaintiff's claims really amount to disagreement with medical restrictions placed by jail medical staff, he cannot establish an ADA or Rehabilitation Act violation, and the court must grant summary judgment to defendants on these claims.

## II. Fourteenth Amendment Due Process[3]

[3] Plaintiff was both a pretrial detainee and convicted prisoner during his various periods of incarceration at that at Dane County Jail. Depending on his status, this means that his rights could arise under the Fourteenth Amendment (pretrial detainee) or Eighth Amendment (convicted prisoner). *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Here, plaintiff's claims fail under either standard because none of the defendants were personally responsible for his NCS diet. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023).

A plaintiff challenging the unreasonable conditions of his pretrial confinement must show that the conditions were objectively serious based on their severity and duration; defendants acted purposefully, knowingly, or perhaps even recklessly with respect to the consequences of their actions; and defendants' actions were objectively unreasonable, meaning that they were not rationally related to a legitimate governmental objective or excessive in relation to that purpose. *See Kemp*, 27 F.4th at 495; *Hardeman v. Curran*, 933 F.3d 816, 822-24 and 827 (7th Cir. 2019). Plaintiff claims that being denied access to adequate food during breakfast and from the canteen, causing him to suffer several episodes of hypoglycemia, were objectively unreasonable conditions. However, "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023).

Here, plaintiff's due process claim fails because he has failed to show that any of the named defendants were personally responsible for prescribing, modifying or ending plaintiff's NCS diet. Rather, the record establishes beyond reasonable dispute that: medical staff prescribed the NCS diet to plaintiff; *and only* medical staff could end the diet. More to the point, plaintiff submitted no evidence from which a reasonable jury could find or infer that Sheriff Barrett, Mary Carpenter or CFS had the authority or ability to override a medical prescription for a specific diet. Indeed, the undisputed facts show that Sheriff Barrett had *no* role in prescribing or implementing medical diets and, although Carpenter and CFS were responsible for the food service at the jail, they, too, were not empowered to make independent decisions about specialized diets for inmates with medical restrictions. Moreover, even if empowered, non-medical staff generally "may trust jail medical professionals to provide inmates with appropriate medical care." *McGee v. Parsano*, 55 F.4th 563, 573 (7th Cir. 2022). Thus, none of the named defendants can be found liable for any harm plaintiff allegedly

suffered resulting from his medical diet. *See Montalvo v. Lamy*, 139 F. Supp. 3d 597, 605 (W.D.N.Y. 2015) (dismissing claim against food service provider where plaintiff failed to show that it had any "authority or ability to override [jail] policy with respect to inmates with dietary restrictions").

Based on his opposition materials, plaintiff appears to understand that medical staff were ultimately responsible for failing to change his jail diet. Indeed, he makes almost no mention of the named defendants; instead, he discusses medical and correctional staff who refused to change his diet or provide additional food. He also challenges Dane County's "policy" of prescribing the NCS diet to all diabetic inmates regardless of individual medical needs. However, plaintiff neither pleaded nor was he granted leave to proceed on any claims challenging his medical care or any medical policies at the jail. Similarly, he named no medical staff as defendants in this case; instead, he sued only the sheriff and food services providers. Because defendants were not responsible for plaintiff's medical diet, the court must grant summary judgment in their favor.[4]

## ORDER

IT IS ORDERED that:

1. Plaintiff Reo Covington's motion for leave to file a sur-reply (dkt. #69) is GRANTED.

2. Defendants' motion to seal (dkt. #50) is GRANTED.

[4] Defendants make several other arguments in support of summary judgment in their briefs (dkt. #46 and dkt. #65), but because their lack of personal responsibility is so clear, the court need not address them.

3. Defendants' motion for summary judgment (dkt. #45) is GRANTED.

4. The clerk of court is directed to enter judgment and close this case.

Entered this 17th day of November, 2026.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge